IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ELVIS A THACKER,                                                                                      PLAINTIFF
ADC #150818

v.                                          5:17CV00256-JM-JTK

LASONYA GRISWOLD, et al.                                                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a Hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before

1

the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.     Introduction

Plaintiff Elvis Thacker is a state inmate incarcerated at the East Arkansas Regional Unit (EARU) of the Arkansas Department of Correction (ADC). He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs by Defendants while he was incarcerated at the Cummins Unit from July, 2016-January, 2017. (Doc. No. 2)

Pending before the Court are the Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 22-24) filed by Defendants Dr. Chris Horan and Advanced Practice Registered Nurse (APRN) LaSonya Griswold. Plaintiff filed Responses in opposition to the Motion (Doc. Nos. 25-26).

### II.    Complaint (Doc. No. 2)

Plaintiff alleged that when he was transferred from Oklahoma to the ADC on July 11, 2016, non-party ADC officers confiscated his seizure, high blood pressure and stomach medications.

2

(Doc. No. 2, p. 7). He suffered from seizures three to five times per day; when he notified guards about this situation they did nothing, and when he notified nurses, they told him to file a sick call. (Id.) Plaintiff claims a cellmate, Alexander Ray, witnessed some of the seizures. (Id.) He saw Defendant Griswold on July 22, 2016, and she told him his records did not show a need for seizure medication. (Id.) He also alleged Dr. Horan refused to address his seizure problem, and stated he would not prescribe seizure medication without witnessing a seizure. (Id.) Plaintiff claimed his medical records at the Cummins Unit in 2011-2012 show that he took seizure medication and that Defendants failed to investigate his complaints and monitor him for a seizure. (Id.) Plaintiff stated he was provided his seizure medication after he was transferred to another Unit on January 27, 2017. (Id.)

### III.  Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary

judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    A.    **Defendants' Motion**

Defendants state Plaintiff's allegations against them should be dismissed because he cannot show that they acted with deliberate indifference to his serious medical needs, and that negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim, citing Estelle v. Gamble, 429 U.S. 97, 106 (1976), and Dulany, 132 F.3d at 1237. According to Plaintiff's deposition testimony, he began experiencing seizures after he suffered a head injury while working at a construction site in 2006-07. (Doc. No. 23-2, p. 15) A neurologist examined him at that time and another who examined him in 2008 or 2009 prescribed Depakote and/or Dilantin for the seizures. (Id., pp 15, 20) Plaintiff also testified that after the injury, he received social security disability benefits but continued to work as a diesel mechanic and welder, and possessed a driver's license. (Id., p. 19) Plaintiff was incarcerated in the ADC in early 2011 and left for a pending criminal case in Oklahoma in August, 2012, where he remained incarcerated until July, 2016. (Id., pp. 21-22, 38). When he returned to the ADC in July, 2016, he was housed at the Cummins Unit. (Id., p. 34)

Defendants also present Plaintiff's medical records which show that Plaintiff filed a sick call about not receiving his medications on July 13, 2016, and Defendant Griswold examined him on July 22, 2016. (Doc. No. 23-1, pp. 1-2) Griswold noted that Plaintiff could not recall when he last suffered a seizure, and after examining him, concluded that there was no indication for a seizure medication prescription. (Id.) Griswold examined Plaintiff a second (and last) time, on October 16, 2016, following a sick call request Plaintiff submitted about suffering from a rash on

his abdomen and legs. (Id., p. 16)  Griswold treated the rash with Stromectol and Permetherin cream and directed Plaintiff to follow up in two weeks. (Id.)

Plaintiff first saw Defendant Horan on November 21, 2016, when he examined Plaintiff for a rash, heartburn, and complaints of seizures. (Id., p. 39) Although Plaintiff reported that he suffered an unwitnessed seizure immediately prior to the exam, Horan found no evidence of symptoms typically present after a seizure, such as drowsiness, confusion, nausea, hypertension, headache or migraine, memory deficits, or other disorienting symptoms. (Id., Doc. No. 23-3, p. 3) Horan treated Plaintiff for rash and heartburn complaints, but concluded that treatment for seizures was not indicated at that time. (Id.)   Horan treated Plaintiff a second time on November 28, 2016, for a full physical examination, but did not note any seizure complaints at that time. (Id., p. 43) Plaintiff saw Horan a final time on January 9, 2017, and although Horan noted that Plaintiff complained of suffering multiple seizures per day, he also noted no medical record of the unwitnessed seizures. (Id., p. 57)

Defendants state that the nursing staff notes show that although nurses regularly conducted rounds in segregation where Plaintiff was housed, no notes suggest that a seizure occurred or that Plaintiff complained of a seizure. (Id., pp. 3-61)   One entry made by a non-party nurse who treated Plaintiff for a rash on November 12, 2016, stated that Plaintiff complained of suffering seizures but that no one could account for it. (Id., p. 35)   And, on January 11, 2017, a non-party nurse received an emergency call to the barracks to examine Plaintiff, and found him lying on the floor on his stomach. (Id., p. 58) Plaintiff was able to get into a wheelchair with minimal assistance, his vital signs were normal, he responded appropriately to questions, and no "post dictal" symptoms of a seizure were identified. (Id.)   Plaintiff was transferred to the EARU on January 27, 2017. (Id.,

5

p. 61)

Defendants also present the Affidavit of Dr. Jeffrey Stieve, the Regional Medical Director for Correct Care Solutions, LLC, the medical care provider for the ADC inmates. (Doc. No. 23-3) Dr. Stieve reviewed Plaintiff's medical records and the treatment provided by Defendants, and concluded that the treatment was appropriate and satisfactory for Plaintiff's complaints, and that Plaintiff's subjective report of seizure activity did not, alone, provide an indication for treatment. (Id., p. 4) Finally, Defendants note that Plaintiff admitted that he did not file any grievances related to his complaints of seizures prior to October, 2016. (Doc. No. 23-2, p. 124-125)

Based on all this evidence, Defendants state that Plaintiff cannot show that they acted with deliberate indifference, and that a disagreement over the course of treatment does not support a finding of an Eighth Amendment violation. Dulany, 132 F.3d at 1240. In addition, Plaintiff provides no medical evidence in the record to show that a delay in his medical treatment caused a detrimental effect on his health. See Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds).

**B.     Plaintiff's Response**

Plaintiff claims in response that Defendants disregarded his complaints about a seizure disorder and failed to provide him seizure medications from July 16, 2016, until his transfer to the EARU in January, 2017. He states Defendants could have ordered that he be housed in an area with supervision and monitoring in order to investigate and possibly witness his seizures, and that they also failed to obtain his medical records from Oklahoma. He adds that although he often was housed in a single-man cell, one of his cellmates from a two-man cell witnessed his seizures. (Doc. No. 2, pp. 6-7) Plaintiff also states that he complained constantly to guards and nurses

6

about his seizures, and was told to file sick call requests. However, when he did file sick calls requests, his seizures were not treated.

    **C.**    **Analysis**

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. at 105-06. Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach, 49 F.3d at 1326. Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

    **1.**    **Defendant Griswold**

The Court finds no evidence of deliberate indifference on the part of Defendant Griswold. According to the medical records, Griswold treated Plaintiff on two occasions, July 22, 2016, and October 16, 2016. (Doc. No. 23-2, pp. 1, 16)   In July, Griswold examined Plaintiff and noted that he could not recall when he last suffered from a seizure. (Id., p. 1-2) In addition, she ordered labs and x-rays for his non-seizure complaints and concluded that no evidence supported a need for a seizure medication prescription at that time. (Id.)   Plaintiff's complaint with this visit amounts to a disagreement over treatment, which does not support an Eighth Amendment violation.   Dulany, 132 F.3d at 1240.   When Griswold examined Plaintiff in October, 2016, it was in response to Plaintiff's complaint about a rash, and Plaintiff did not mention anything about seizures in his sick call request. (Doc. No. 23-1, p. 24).   And, Griswold made no mention of a subjective complaint about seizures in the record of her October 16, 2016 treatment. (Id., p. 27.   Therefore, absent additional evidence, the Court finds as a matter of law that Defendant Griswold did not violate Plaintiff's constitutional rights.

### 2. Defendant Horan

While Defendant Horan may have been, at most, negligent in failing to acknowledge Plaintiff's seizure complaints, again, there is no medical evidence to support Plaintiff's claim that his actions were deliberately indifferent.   Horan saw Plaintiff three times, and in all of those cases, he examined Plaintiff for symptoms related to his complaints. (Doc. No. 23-1, pp. 39, 43, 57) Again, Horan noted that none of Plaintiff's seizures were witnessed, and that he did not exhibit post-seizure symptoms. (Id., pp. 39, 57)   The Court also finds compelling the fact that from July 22, 2016, until his transfer to EARU on January 27, 2017, nurses visited/check on Plaintiff in segregation almost every day, and in some instances, more than once a day. (Id., pp.

3-61)  Yet, according to those records, Plaintiff did not complain on any of those occasions about having suffered a seizure, or about suffering effects of a seizure. (Id.) Furthermore, Plaintiff did not even file a grievance about his lack of seizure medication until October 14, 2016, nearly three months after he arrived at the Cummins Unit. (Doc. No. 2, p. 8)   Although Plaintiff states he complained constantly about daily seizures, there is not one reference of such in the records of those daily nurse visits, other than that he offered no complaints.   The only written complaints he made were the sick call requests submitted on July 13, 2016, September 30, 2016, November 11, 2016, and January 1, 2017. (Doc. No. 23-1, pp. 1, 20-21, 33, 49)   As noted above, Defendant Griswold examined Plaintiff shortly after the July request. He was examined by a non-party nurse following the September 30, 2016 request, who noted multiple complaints, including a need for renewal of his seizure medication. (Id., p. 23)   The nurse then referred Plaintiff to a provider for evaluation, but Plaintiff voiced no seizure complaints when he saw Griswold shortly thereafter on October 16, 2016. (Id., p. 27)   A non-party nurse examined Plaintiff following the November 11, 2016 request, again, for several complaints, and noted that no one in the East Building could account for seizure activity and that Plaintiff stated he requested that a copy of his medical records be sent from Oklahoma. (Id., p. 35) When Dr. Horan examined Plaintiff on November 21, 2016, he noted that Plaintiff was "not postictal," meaning he showed no symptoms typically present after a seizure. (Id., p. 39; Doc. No. 23-3, p. 3).   And, following the January 1, 2017 sick call request, Horan noted no medical record of the unwitnessed seizures. (Doc. No. 23-1, p. 57)   It should be noted that the only alleged seizure recorded in his medical records occurred on January 11, 2017, after he last saw Defendant Horan, and the non-party nurse who treated Plaintiff found no physical evidence to support

9

Plaintiff's complaints. (Id., p. 58).   Therefore, the Court finds as a matter of law that Defendant Horan's actions did not violate Plaintiff's Eighth Amendment rights.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 22) be GRANTED, and Plaintiff's complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 16th day of July, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE